**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**ANGELA KAY MOORE**                                                                               **PLAINTIFF**

**vs.**                                                                        **CIVIL ACTION NO. 3:10-CV-00113-SAA**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SSA**                                                                          **DEFENDANT**


**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Angela Kay Moore for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed applications for POD, DIB and SSI on August 3, 2007, alleging disability beginning on January 30, 2006. Docket 6, p. 129-137, 142.[1] Plaintiff's claim was denied initially and on reconsideration. Docket 6, p. 79-82, 84-98. She filed a request for hearing (Docket 6, p. 101-102) and was represented by an attorney at the administrative hearing on November 16, 2009. Docket 6, p. 44- 77. At the hearing, the plaintiff amended her alleged onset date to March 30, 2006. Docket 6, p. 48. The Administrative Law Judge (ALJ) issued a partially favorable decision on December 15, 2009, finding the plaintiff disabled as of January 21, 2009 but not before that date. Docket 6, p. 20-31. The Appeals Council denied plaintiff's request for a review. Docket 6, p. 6-9. Plaintiff filed the instant

---

[1]The Administrative Record in this case is found at Docket #6. All citations to the Administrative Record are to the Page Number at Docket Entry 6 and not to the original page numbers at the bottom of the page.

appeal from the ALJ's most recent decision, and it is now ripe for review. Because both parties consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on January 5, 1978 and was twenty-eight years old at the amended alleged onset of her disability. Docket 6, p. 50. She completed high school and one year of college (Docket 6, p. 51-52) and previously worked as a cashier, certified nursing assistant and sales associate. Docket 6, p. 68-69. She claimed disability due to depression and panic attacks. Docket 6, p. 158.

The ALJ determined that since the amended alleged onset date of March 30, 2006, the plaintiff suffered from "severe" impairments, including major depressive disorder and obesity[2] (Docket 6, p. 22-24), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(c) and 416.920(c)). Docket 6, p. 24-25. The ALJ found that before January 21, 2009, the plaintiff's mental disorder caused only mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, maintaining concentration, persistence or pace, limitations in functioning and one to two episodes of decompensation, each of extended duration. Docket 6, p. 24. Since January 21, 2009, the ALJ found "ongoing deterioration in functioning with physical evidence of self-mutilation" that would cause absence from work on a regular basis. Docket 6, p. 29.

---

[2]At the hearing, the plaintiff testified that she was 5'7" to 5'8" tall and weighed 400 pounds. Docket 6, p. 51.

Considering the entire record, the ALJ concluded that before January 21, 2009, the plaintiff retained the Residual Functional Capacity (RFC) to perform a full range of work at all exertional levels in that she "could perform simple, routine tasks; follow short, simple instructions and make only simple, work-related decisions with few work place changes. She needed to avoid work place hazards such as heights and moving machinery. She could no[t] interact with the public and occasionally interact with co-workers and supervisors, with non-confrontational supervision. She was able to sustain concentration and attention for two hours with normal breaks. She could not work at a production rate pace." Docket 6, p. 25. From January 21, 2009 forward, however, the ALJ added to the RFC that plaintiff would miss three or more days of work per month. Docket 6, p. 28.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff was unable to perform any past relevant work. Docket 6, p. 29. However, he found, until January 21, 2009 she could, with the limitations set out by the ALJ in her hypothetical, perform the requirements of jobs such as wood working machine feeder, laundry worker and garment folder. Docket 6, p. 30. The ALJ concluded that the plaintiff became disabled on January 21, 2009 and was "not disabled" under the Act before January 21, 2009. Docket 6, p. 31. After January 21, 2009, the ALJ concluded that, considering the plaintiff's age, education, work experience, and RFC, the plaintiff could no longer perform the requirements of any job that exists in significant numbers in the national economy and the plaintiff therefore was disabled under the Act.

The plaintiff claims that the ALJ erred in weighing the opinions of the treating and consulting opinions, resulting in his reaching an RFC for the period before January 21, 2009 that was erroneous and not supported by the evidence, and that the ALJ also erred in failing to obtain

a medical expert's opinion to properly determine the onset date of the plaintiff's disability.

## II.  STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3]  The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[4]  First, plaintiff must prove she is not currently engaged in substantial gainful activity.[5]  Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[6]  At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[7]  If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[8]  At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

---

[3]*See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[4]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[5]20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[6]20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[7]20 C.F.R. §§ 404.1520(d), 416.920(d) (2010).  If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925 (2003).

[8]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

past work experience, that she is capable of performing other work.[9] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[11] even if it finds that the evidence leans against the Commissioner's decision.[12] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a

---

[9]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[10]*Muse*, 925 F.2d at 789.

[11]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[12]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since March 30, 2006, satisfying step one.[13] The ALJ found at step two that plaintiff's depression and obesity were severe impairments but, at step three, that her impairments did not meet the stringent requirements set out in the listings.[14] The ALJ further determined that the plaintiff retained the functional capacity for a full range of work at all exertional levels. Docket 6, p. 25-28. Although the ALJ found at step four that the plaintiff could not return to her past work, she concluded at step five that the plaintiff was capable of performing other work from March 30, 2006 through January 20, 2009 and was not disabled until January 21, 2009. Docket 6, p. 28-31.

On February 22, 2008, the plaintiff's treating physician, Dr. Leal, provided a medical source statement diagnosing the plaintiff with "major depressive disorder, recurrent, moderate," reporting three episodes of decompensation, and finding that her impairments or treatment would

---

[13]The plaintiff testified that she worked only for a brief period of time since March 2006 (Docket 6, p. 53) and the ALJ found that it did not rise to the level of substantial gainful activity. Docket 6, p. 22.

[14] *See Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that he meets each element of the listing).

6

cause absence from work about three times a month.[15]  Docket 6, p. 243 - 248.   The ALJ afforded "only partial weight" to Dr. Leal's opinion because it was "not supported by the objective medical evidence or his own findings."  Docket 6, p. 27-28.   However, beginning January 21, 2009, the ALJ found that Dr. Leal's opinion was fully supported by his treatment records, and the ALJ included the previously rejected limitation that the plaintiff would miss three or more days of work per month in her RFC.  Docket 6, p. 28.  The ALJ stated that beginning with a January 2009 therapy session, the record revealed "a deterioration in functioning with physical evidence of self-mutilation," little improvement with medication and decreased GAF and Multonomah scale scores. Docket 6, p. 29.

Challenging the ALJ's RFC, the plaintiff argues that the ALJ erred in discounting Dr. Leal's opinion for the period before January 21, 2009 because the record contained no evidence from a treating or examining physician contradicting Dr. Leal's opinion.  Docket 9, p. 1-12.

The Commissioner responds that Dr. Leal's opinion was properly discounted because it was "internally inconsistent,"specifically that he found only moderate limitations in the "major domains of functioning" but found marked limitations in the more detailed work-related

---

[15]Additionally, Dr. Leal found moderate restriction of activities of daily living, difficulties in maintaining social functioning and deficiencies of concentration, persistence or pace and "marked" restrictions in maintaining attention for two hour segments, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting and dealing with normal work stress.  Docket 6, p. 247 - 248.  Dr. Leal further stated that "Angela has a diagnosis of depression which causes her to experience some days where she is unable to perform daily tasks.  Angela also experiences panic attacks when she is surrounded by large crowds." Docket 6, p. 248.

7

abilities.[16] The Commissioner further argues that Dr. Leal did not provide support for his finding episodes of decompensation and that his report was not consistent with other mental health records. Docket, 11, p. 11-17.

In discounting Dr. Leal's opinion, the ALJ acknowledged the "long standing treating relationship" between the plaintiff and Dr. Leal, but found that the record did not support his opinion regarding the plaintiff's degree of absenteeism. Docket 6, p. 27-28. The ALJ found "minimal evidence" to support disabling functions between March 30, 2006 through January 20, 2009 and that the record failed to reflect the type of medical treatment expected "for a totally disabled individual." Docket 6, p. 26. He further noted significant gaps in mental health treatment history and routine and conservative treatment, as well as GAF scores of 65 or 70. *Id.* The Commissioner points to a record from a treating physician at Communicare stating a GAF score of 70 in April 2006, shortly after the alleged date of disability. Docket, 11, p. 13.

The record contains a comprehensive mental status examination from Dr. Small, diagnosing the plaintiff with depressive reaction NOS, panic disorder and morbid obesity. Docket 6, p. 227. Dr. Small further reported that she has panic attacks frequently, scratches herself until she bleeds, and "her ability to maintain a concentrated effort towards tasks would be compromised by her panic disorder." *Id.* Dr. Small stated her prognosis over the next twelve months in obtaining and maintaining competitive employment to be "poor to guarded." *Id.* The ALJ afforded "only partial weight" to Dr. Small's opinion because he did not quantify her

---

[16]The Commissioner explains "[f]or example, Dr. Leal felt that Plaintiff's overall ability to maintain concentration, persistence, and pace was only moderate, but that Plaintiff had marked limitations in her ability to maintain attention and concentration for even two hours." Docket, 11, p. 12.

concentration deficit. The ALJ was "unable to accord any weight or special significance" to Dr. Small's statement regarding the plaintiff's prognosis for obtaining and maintaining competitive employment because it "was beyond his purview" and "would be something for the vocation expert to address." Docket 6, p. 28. As far as the court can determine, Dr. Leal and Dr. Small's opinions are the only complete medical source statements contained in the record.[17]

The only distinction in the RFC assigned by the ALJ from March 30, 2006 through January 20, 2009 and the RFC assigned after January 21, 2009 was the degree of absenteeism. Under the hypothetical ultimately adopted by the ALJ, the VE testified that the plaintiff was capable of performing other work such as wood working machine feeder, laundry worker and garment folder. Docket 6, p. 68 - 73. However, when the ALJ added the limitation of missing work three or more days per month as presented by Dr. Leal, the VE testified that no jobs would exist. Docket 6, p. 68 - 73.

It is the ALJ's responsibility to determine the plaintiff's residual functional capacity, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), and in doing so he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite his physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the ALJ may not "substitute his own views for uncontroverted medical opinion." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

The ALJ discounted Dr. Leal's opinion that the plaintiff's impairments or treatment

---

[17]The only other consultative examiner, Dr. Hinson, had "insufficient evidence" to provide a detailed report. Docket 6, p. 229 -241.

9

would cause her to be absent from work about three times a month because the record showed only moderate limitations. Docket 6, p. 28. The ALJ explained that she did not believe the record contained evidence to establish the required severity until January 21, 2009. However, in discounting Dr. Leal's opinion, she did not demonstrate her consideration of the *Newton* factors[18] or point to a medical opinion that disputes Dr. Leal's finding on absenteeism. Instead, the ALJ additionally discounted the opinion of Dr. Small, a conservative examiner chosen by the SSA and the only other doctor who provided a complete medical source statement.

Given that the ALJ found inconsistencies in Dr. Leal's report, she should have requested additional evidence or clarification. An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further assure that "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1). As evidenced by his October 16,

---

[18]The Fifth Circuit noted, in *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), that there are several factors the ALJ must consider before declining to give evidence of a treating physician controlling weight:
      (1) the physician's length of treatment of the claimant,
      (2) the physician's frequency of examination,
      (3) the nature and extent of the treatment relationship,
      (4) the support of the physician's opinion afforded by the medical evidence of record,
      (5) the consistency of the opinion with the record as a whole; and
      (6) the specialization of the treating physician.

2009 updated report[19], Dr. Leal was willing to submit additional information.

Instead of discounting Dr. Small's opinion regarding the plaintiff's potential for obtaining employment, the ALJ could have sought additional information from Dr. Small. For example, so he could have elicited opinion evidence on the number of days the plaintiff's impairments would cause her to be absent from work. This information was particularly important because the record does not contain any other medical opinion on this issue, and it was the sole distinction in the plaintiff's RFC after January 21, 2009 with a finding of "disabled" and before January 21, 2009 with a finding of "not disabled." Further, the ALJ could have requested an additional consultive examination or sought information from the plaintiff's other doctors, particularly from the doctors at Communicare who provided the GAF scores that the ALJ relied on in discounting Dr. Leal's opinion.

The undersigned finds that the ALJ did not satisfy his affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Therefore, the ALJ's decision was not supported by substantial evidence and should be remanded for further development of the record.

## IV. PLAINTIFF'S REMAINING ARGUMENTS

Because this action is being remanded for further evaluation consistent with this opinion, the court need not address in detail the merits of the plaintiff's remaining arguments at this time.

---

[19] Dr. Leal's Updated Mental Opinion noted additional "intrusive recollections of a traumatic experience, persistent irrational fears, additional episodes of decompensation and compliance with therapy and medication. Docket 6, p. 605-606.

## V. CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 27th day of June, 2011.

>                /s/ S. Allan Alexander                
> UNITED STATES MAGISTRATE JUDGE